[File No. 7052]

THEODORE KRUEGER, Appellant v. CITY OF HATTON
and S. O. BRUDEVIG, Respondents.

(28 NW2d 749)

Opinion filed August 6, 1947

*Lyche & Lyche,* for appellant.

*Charles H. Shafer,* for City of Hatton, respondent, and *T. L. Degnan,* for Brudevig, respondent.

BURKE, J. In this action plaintiff sought to recover an excess in liquor license fees which he alleged had been illegally exacted by the defendant, City of Hatton. The defendant, Brudevig,

was a partner of the plaintiff in the liquor business and was made a defendant when he refused to join as a party plaintiff. Judgment was rendered against the plaintiff and upon an appeal from the judgment, the case is here for a trial anew.

The Liquor Control Act adopted as an initiated measure on Nov. 3, 1936 (Chap 259, Laws of 1937) granted to the governing boards of cities and villages the power to regulate and license the sale of intoxicating liquors within their incorporated limits. Minimum and maximum annual license fees were fixed at $200.00 and $1,000.00 respectively. The City of Hatton fixed the annual license fee at $750.00 and in December 1936 granted separate licenses to the plaintiff and Oscar Brudevig, brother of the defendant, S. O. Brudevig, to engage in the business of selling intoxicating liquor. Oscar Brudevig's establishment was managed by S. O. Brudevig. On July 1, 1937 each of these licenses was renewed for one year.

Early in 1938, petitions for the establishment of a municipal liquor store were circulated in the city and at the regular city election held in April, the question of whether such a store should be established was submitted to the electorate. The vote was overwhelmingly in favor of the municipal store and an ordinance providing for such a liquor store was thereafter enacted by the city council.

Later the defendant, Brudevig, who was a member of the city council as well as manager of his brother's liquor store, upon his own initiative, entered into a discussion with C. S. Anderson, Mayor of the city, relative to the effect the ordinance would have upon private enterprise in the liquor business. He testified: "I went into the bank and asked him if he really intended to put the thing through and he said, 'Yes, that is the people's wish.' I said: that wouldn't be fair to knock us out of business. I have a job there and my brother told me it would put us out of business. And he said, 'If they want one store, why don't you and Krueger get together and run one store?'" Q. "Who told you that?" A. "My brother. So I went in to Anderson and said, I didn't think it was fair for the city to knock us out of business. And he said, 'if they want one store, why don't you and Krueger

go in together?' And I saw it was going to be started—a municipal liquor store. And he said, 'How do you think it should be run?' And I said, I don't know. Probably we could pay you on a percentage basis, because we don't know what we will make. He wanted $1,000.00. I said that is all right. I didn't kick about that. I said, for my part I will take a chance on it. But you better call in Krueger and see what he thinks."

Anderson did call Krueger and arranged to meet with him and Brudevig in the bank on the evening of the same day. At that meeting an agreement was reached upon a proposal to be presented to the city council. In describing this meeting Brudevig said, "We came in there and Cal (Anderson) was the chairman and led the thing through. I didn't disagree with him. I thought I would take a chance and see how it worked out. And I didn't hear anyone else make much protest either." Mr. Krueger stated that he objected to the amount of the license fee and only agreed to the proposal under the threat of being forced out of business.

Brudevig presented the proposal to the city council. On June 13, 1938, the city council by resolution accepted the proposal. Because of the unusual nature of the arrangement, we shall set out the resolution at length.

### Resolution

Whereas, The qualified electors of the City of Hatton, North Dakota, at a general City election, have by a large majority expressed their wish that a municipal liquor store be established within the City and operated by or under the supervision of the City Council; and, whereas, the City Council has heretofore made and passed its ordinance providing for such a municipal liquor store; Now, Therefore,

Be it resolved By the City Council of the City of Hatton, North Dakota, that a municipal liquor store be established and operated in the following manner, to-wit:

That a contract be made and entered into by the City of Hatton, a municipal corporation, as party of the first part, and S. O. Brudevig and Theodore Krueger, as parties of the second

part, to establish and operate such liquor store under the following terms, provisions and agreements:

The said second parties, S. O. Brudevig and Theodore Krueger, shall own all the necessary property of such liquor store, and shall at their own expense operate the same, and shall operate the same in full compliance with State and Federal laws, City Ordinances, and specific agreements made with the party of the first part, and said second parties shall be in every respect personally responsibility and liable for any violation of laws, rules, regulations or agreements in connection with the operation of such liquor store.

The said parties of the second part shall sign and execute the required application for license, and shall furnish the required bond of One Thousand (1000.00) Dollars, to be approved in the manner provided by ordinance, and shall pay a license fee as hereinafter provided and obtain the required license before entering into the business of operating such liquor store.

The license fee shall be ten per cent of the gross sales made by said liquor store during the entire period of its operation, and the minimum of such license fee shall be the sum of One Thousand Dollars ($1000.00) to be paid in advance at the time of obtaining such license. Thereafter, on the 10th day of each month the said S. O. Brudevig and Theodore Krueger shall make a full accounting to the City Council of all gross sales made by such liquor store, and whenever ten percent of such gross sales shall exceed the One Thousand Dollars already paid in advance, the said percentage shall be paid to the City Treasurer monthly—on the 10th day of each month—by the said S. O. Brudevig and Theodore Krueger.

The duration of such contract shall be for the period of one year commencing with the 30th day of June, 1938.

The Mayor or the City Council, or any person appointed by the Mayor or the City Council, shall at all times have free access to the premises of such liquor store, and to the books and records of said S. O. Brudevig and Theodore Krueger for the purpose of inspection, and shall at all times have the right to

examine anything and everything in connection with the operation of such liquor store.

Any violation of law, rules, regulations or agreements entered into, by the said S. O. Brudevig or Theodore Krueger, shall be ground for an immediate cancellation of the license granted and a closing of the liquor store.

Adopted this 13th day of June, A. D. 1938.

C. S. Anderson
Mayor.

Attest:
   M. S. Haakenson
   City Auditor.

On June 25, 1938, the City of Hatton entered into a contract with Brudevig and Krueger in accordance with the provisions of this resolution. The contract was renewed each year until July 1, 1942, without objection on the part of the plaintiff.

It is obvious that the Liquor store operated by Brudevig and Krueger, under this contract, was not a municipal liquor store. It was operated under an arrangement whereby the city in consideration of a license fee based upon a percentage of the gross sales and consent to inspection, granted the plaintiff and Brudevig a monopoly of the liquor business in the city. To the extent that the license fee exceeded the maximum of $1,000.00, permitted by the Liquor Control Act, it was an illegal exaction contrary to express statutory provisions.

It is plaintiff's contention that the excessive license fee was exacted from him under the threat of putting him out of business, that his apparent consent to the agreement was not a real consent and that therefore he is entitled to recover the excess. It appears to be the general rule that an excess in license fee obtained by extortion, fraud, force or moral or legal compulsion may be recovered. 48 CJS 319.

The facts here, however, do not present the ordinary case of the exaction of an excessive license fee. Here a special privilge, a monopoly, was given in consideration of the excessive fee. Plaintiff paid his share of the excessive fee for four years and enjoyed the benefits of the monopoly for four years. Concededly

the contract was illegal. We are satisfied from the record that Krueger knew it was illegal, not only upon the basis of presumptive knowledge but also of actual knowledge. And we cannot avoid the conclusion that the granting of the exclusive right to sell liquor was a cogent inducement for his agreement to pay an excessive fee. Undoubtedly, Mr. Krueger would have liked to have made a better deal. He said, "I objected to their wording of municipal liquor store. And Mr. Anderson said the people voted overwhelmingly for a municipal liquor store and by having a municipal liquor store (of this nature) it would satisfy both factions—those that voted for it and those that voted against it. Then I was against that ten percent business, but I didn't get anywhere." It is evident that Mr. Krueger, Mr. Brudevig and the Mayor, at the conference in the bank agreed upon a political and business expedient, illegal in its nature, which Mr. Brudevig was to present to the City Council as the proposal of Brudevig and Krueger and which it was expected the council would adopt through the influence of Councilman Brudevig and Mayor Anderson.

In the circumstances it is apparent to us that all parties were in pari delicto and as a consequence plaintiff may not recover. Janzen v. Crum, 50 ND 544, 197 NW 138; 17 CJS 660.

The judgment of the district court is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE and BURR, JJ., concur.

MORRIS, J. did not participate.